# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| TINA HILLMAN, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| vs. ) | Case No. |
| ) | |
| DWYER INSTRUMENTS, INC. ) | |
| Serve: Registered Agent ) | |
|     CT Corporation Systems ) | |
|     120 South Central Avenue ) | |
|     Clayton, Missouri, 63105 ) | |
| ) | |
|     Defendant. ) | |

## **COMPLAINT**

Plaintiff Tina Hillman ("Plaintiff" or "Tina"), for her complaint against Defendant Dwyer Instruments, Inc. ("Dwyer"), states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an individual residing in Harrisonville, Missouri.

2. Dwyer is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business located in Indiana. It can be served through its registered agent, CT Corporation Systems, 120 South Central Avenue, Clayton, Missouri, 63105.

3. Dwyer has more than 500 employees.

4. The Court has jurisdiction over this action—which includes claims arising under the Missouri Human Rights Act (RS Mo. § 213.010, *et seq.*) (the "MHRA")—pursuant to 28 U.S.C. § 1332.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Dwyer does business in the State of Missouri and because the events or omissions giving rise to the subject matter of this action occurred in Jackson County, Missouri.

1

## FACTUAL BACKGROUND

6. Tina worked at Dwyer Instruments, Inc. ("Dwyer") from October 2014 through June 12, 2020.

7. ***Tina's Initial Complaints Concerning Swillum.*** In late 2018, Tina made two complaints concerning the conduct of a former co-worker, James Swillum, who was a supervisory-level employee at Dwyer.

8. The first complaint was for sexual harassment, and the second was related to the fact that Swillum had obtained the cell phone number of Tina's daughter (who also worked for Dwyer) from her daughter's personnel file and then messaged her daughter for reasons unrelated to work.

9. Following her complaints, Tina thought that Dwyer investigated Swillum's conduct.

10. In late-2018, following a short departure from employment at Dwyer around the time of her complaints concerning Swillum, Tina returned to work at Dwyer based on assurances that Swillum's admitted sexual harassment would stop.

11. ***Swillum's Continued Harassment Following Complaints.*** After Tina returned, however, Swillum's conduct—which stopped for a period after her complaints—continued, and in fact, worsened.

12. Almost every day that Tina encountered Swillum at the company's plant in Grandview, Missouri, Swillum would make a sexually laced comment or innuendo to her.

13. In October 2019, Swillum asked Tina to go out to dinner with him, but she rejected his request.

14. Undeterred, Swillum asked Tina to dinner again in November 2019, but again, she turned down the request.

15. Later in November 2019 or early December 2019, Tina asked the plant manager, Greg Hampton, for her boot allowance.

16. Swillum—who likely found out about Tina's request from Hampton—told Tina to pick a restaurant and a boot store and that he would take her out to dinner and buy her the boots as a Christmas present.

17. The boot allowance is something that Tina was entitled to as a matter of right for her position, and she certainly should not have had new boots conditioned on whether she went to dinner with Swillum.

18. Swillum did not want her to tell anyone, though, for fear that people in the plant might think he was a "nice guy."

19. Additionally, on multiple occasions in December 2019, Swillum sought Tina out in the warehouse to tell her to let him know when she wanted her "Christmas present" from him.

20. When Tina had health problems in December 2019, Swillum told her that he would take her to the doctor's office.

21. Swillum was attempting at every angle to overwhelm Tina, and in late December 2019, she had had enough.

22. She was tired of being ogled over by Swillum, and she was tired of crying on her way home from work at night; she simply wanted to do her job free from Swillum's unwelcome and illegal intrusions.

23. ***Tina's Additional Complaints Concerning Swillum.*** On Thursday, January 2, 2020, Tina—through counsel—contacted Dwyer's human resources manager, Maureen Zakutansky, concerning Swillum's continued harassment.

24. ***Swillum's Continued Misconduct.*** On Friday, January 3, 2020, Swillum continued in his pursuit of Tina.

25. Swillum offered to help her fix a wheel on her car, even though Tina had repeatedly indicated to him that her father had taken care of the problem.

26. ***Dwyer's "Chain of Command" Instructions.*** On Tuesday, January 7, 2020, Tina received informal guidance from Dwyer's employees concerning the proper chain of command at Dwyer for reporting problems such as alleged sexual harassment.

27. The guidance Tina received was that she was to report issues she had or was having to her lead, Matt, who would then report said issues up the chain of command to Hampton.

28. According to Dwyer's protocol, Hampton would then report the issues directly to Dwyer's human resources team.

29. However, the reason Tina went directly to Dwyer's human resources team on January 2, 2020, and specifically, Zakutansky, was because for many months prior to January 2nd, Tina had reported her issues with Swillum directly to her lead, Matt, and Matt indicated that he had then talked to Hampton directly about Tina's concerns.

30. Matt agreed with Tina that Swillum's behavior and treatment of her was abhorrent, and Matt indicated to Tina that he had had multiple discussions with the plant manager, Hampton, concerning her complaints.

31. Hampton did nothing, however, to intervene or remedy Tina's complaints, and instead, turned a blind eye to Tina's complaints and protected Swillum.

4

32. In other words, the problem at Dwyer was not in the chain of command or the protocol; the problem was that the male employees (specifically, Hampton) in Dwyer's chain of command were not taking Tina's complaints seriously and were more focused on sweeping issues under the rug and looking out for their buddies.

33. Hampton did not believe that Swillum's comments were harmful, and he chastised Tina for reporting the conduct and accused of her being disloyal to Dwyer.

34. ***Dwyer's Retaliation Against Tina.*** On Wednesday, January 8, 2020, Tina was advised that, even though she had worked overtime for weeks and months before complaining about Swillum's conduct, Hampton was prohibiting her from working overtime that she counted on to make ends meet.

35. Hampton claimed that his instructions in this regard were on account of a wrist injury that Tina had.

36. However, nothing about the wrist injury had kept Tina from working overtime for Dwyer *prior* to her making her complaint on January 2nd.

37. It was only *after* she made her complaint on January 2nd that Hampton thought it appropriate to limit her ability to work overtime.

38. As of January 24th, Tina's doctor cleared her to push, pull, and lift up to 30 pounds, which is an amount that is more than sufficient for Dwyer to permit her to work overtime hours on the line that she had been working overtime hours on prior to her January 2nd complaint.

39. However, despite being cleared, Dwyer restricted Tina's ability to work overtime, thereby limiting her ability to earn more money and provide for her family.

40. Hampton precluded Tina from working overtime because she had complained about Swillum and about Dwyer's handling of her complaints.

41. During the week of January 27th, Tina was advised by Matt, her lead, that she was being moved to the "pitot" tube area of the plant, which is regarded by everyone at the plant as the worst possible place to work in the plant.

42. The men in the pitot tube area did not listen to Tina and harassed her.

43. Tina was moved to "pitot" because she had complained about Swillum's misconduct and Dwyer's handling of her complaints.

44. On February 5th, Tina was threatened by Hampton after she refused to sign a document concerning her prior complaints to Dwyer about the fact that she had been precluded from working overtime hours.

45. During a meeting that she had with Hampton and Matt, Hampton showed her the paperwork and told her that she needed to sign it immediately.

46. Tina told him that she wanted to review the document and show it to her attorney.

47. Hampton then asked Tina "why in the world" she would need to show the document to her attorney, and he asked her why she wanted to work at Dwyer with an attorney advising her.

48. Tina told him that her attorney was protecting her, and that she was working with an attorney to protect herself.

49. Hampton then said, sarcastically, "Protection?", and he went onto say that he "protected" everyone in Dwyer's plant, and he indicated that he thought Tina was being weak and not loyal to Dwyer.

50. Hampton asked her what she needed to be protected from—ignoring the fact that she had been continually harassed by Swillum (who by this time had been fired, presumably for admitting that he had serially harassed Tina) and ignoring the fact that she had been retaliated against on almost a daily basis by Dwyer.

6

Case 4:20-cv-00558-DGK   Document 1   Filed 07/14/20   Page 6 of 14

51. Tina told Hampton that she was not going to argue with him any further, and she told him that she would return the document within 24 hours after she had had an opportunity to review the document.

52. In mid-March 2020, Tina learned from Timothy Vincent, a relatively new employee at Dwyer, that Hampton had told him (Timothy) that Matt (Tina's lead) was being considered for the job that Swillum had vacated after she made her complaints at the beginning of the year.

53. Though Tina would have been the most qualified employee to replace Matt in his role as a lead, and though the promotion would have meant a great deal to Tina and permitted her to make more money to support her family, Hampton had already ruled out Tina's promotion.

54. Hampton told Timothy that there was no way that Tina, a female, would get Matt's position.

55. Hampton did not want to promote Tina and would not have promoted her in the future on account of the fact that she was a female and because of the fact that she had complained to Dwyer about Swillum and about Hampton's incompetence and malevolence in failing to follow Dwyer's sexual harassment protocol.

56. On May 20, 2020, a spider bit Tina while she was at work.

57. Tina spoke with Matt immediately about the bite and about the pain she was feeling.

58. She talked to Hampton about the bite to see if he would permit her to go see a doctor, and he told Tina to "put some Neosporin on it," and he did not permit her to go see Dwyer's workers' compensation doctor, even though the injury had clearly occurred at work.

59. Hampton did not believe that the spider bite had occurred at Dwyer, and he did not want Dwyer to incur the expense associated with any medical care that Tina needed in this regard.

60. He also thought that Tina just needed to tough it out.

61. As the day progressed, though, the pain from the spider bite worsened, and Tina began to develop a fever.

62. Eventually, Tina was permitted to leave to go see her personal physician—not the company's workers' compensation doctor.

63. Tina's doctor advised her that, because she had a fever, she needed to miss some work to recuperate.

64. This was devasting to Tina, primarily from a financial perspective, because she relied on every dollar that came in from her work at Dwyer to live on.

65. The next morning—in the midst of the Covid-19 pandemic—Hampton told the leads that Tina had a fever and that they and the other workers at the plant should be aware of who Tina was around and clean areas where she had been working.

66. Essentially, Hampton insinuated to the leads (and indirectly, the plant as a whole) that Tina might have the Covid-19 virus and that people should stay away from her.

67. On Tuesday, May 26th, Hampton told the leads that some "girl who got a spider bite" had cost Dwyer its chance at achieving a safety-related goal that might have permitted Dwyer's employees to have a pizza party.

68. Tina was the "girl who got a spider bite," and Hampton had no legitimate reason to tell the leads this information and disclose confidential information about Tina's health; he simply wanted to spread rumors about Tina and disparage her and make her feel unwelcome at the plant.

69. On May 26th, Tina spoke with Zakutansky again and told her about what Hampton had done and said about Tina.

70. Zakutansky was appalled by what Hampton had said about Tina to the leads—both in terms of the fever that she had and in terms of her being the cause of the company losing its chance at a pizza party.

71. Tina also told Zakutansky that all of the leads that had heard what Hampton had said about Tina were so terrified of Hampton that they would not tell Zakutansky the truth about what had happened if they believed that Hampton was going to find out that they had talked with Zakutansky.

72. Zakutansky inexplicably asked Tina to talk to the leads to see if they would be willing to talk to Zakutansky confidentially.

73. Zakutansky also asked Tina to obtain the leads' cell phone numbers so that Zakutansky could call them directly on those numbers without Hampton knowing of what was happening.

74. At one point, Zakutansky told Tina that she (Zakutansky) had washed her hands of the workers' compensation issue that had arisen with respect to the spider bite that she suffered on May 20th.

75. In other words, Zakutansky was unwilling to help Tina ensure that she was properly taken care of, and more importantly, Zakutansky was unwilling to confront Hampton and reprimand him for his continued retaliation against Tina.

76. Faced with no other choice, Tina submitted her resignation from Dwyer on June 1, 2020, advising Dwyer that her last day with the company would be June 12, 2020.

77. **Tina's Charges of Discrimination.** As a result of Dwyer's conduct, Tina submitted a Charge of Discrimination to the EEOC and the Missouri Commission on Human Rights ("MCHR") on or about January 13, 2020.

78. She submitted an Amended Charge of Discrimination on February 2, 2020.

79. She submitted a Second Amended Charge of Discrimination on February 5, 2020.

80. She submitted a Third Amended Charge of Discrimination on March 22, 2020.

81. She submitted a Fourth Amended Charge of Discrimination on May 27, 2020.

82. Tina received a Notice of Right to Sue from the MCHR in connection with on or about July 13, 2020.

83. ***Other Allegations of Harassment and Retaliation.*** In the months following Tina's submission of her Charge of Discrimination, multiple other female employees of Dwyer filed Charges of Discrimination (the "Additional Charges of Discrimination") against Dwyer concerning sexual harassment that they experienced at Dwyer.

84. In the Additional Charges of Discrimination, the other female employees detailed sexual harassment that they experienced, their reporting of said harassment, Dwyer's handling of the complaints, Hampton's reactions to the complaints, Dwyer's retaliation against the women for their complaints, and the overall failure of the company's male supervisors to take seriously the harassment complaints.

## **COUNT I – SEX DISCRIMINATION – MISSOURI HUMAN RIGHTS ACT**

85. Plaintiff incorporates the allegations set forth in paragraphs 1-84 as if fully set forth herein.

86. Dwyer is a covered employer under the MHRA.

87. Plaintiff, a female, is a covered employee under the MHRA.

88. Dwyer discriminated against Plaintiff on the basis of her sex in, among other ways, the following ways:

   a. Permitting Swillum to sexually harass Tina in 2018, 2019, and 2020;

  b. Failing to ensure that Swillum's sexual harassment of Tina stopped following her initial complaints in 2018;

  c. Failing to ensure that Swillum's sexual harassment of Tina stopped as she made additional complaints to her lead, Matt, in 2019;

  d. Failing to ensure that Swillum's sexual harassment of Tina stopped as she made a complaint in January 2020;

  e. Permitting its plant manager, Hampton, to ridicule Tina for making her complaints; and/or

  f. Not promoting Tina to a "lead" role following the termination of Swillum's employment in early 2020.

89. Swillum's conduct toward Tina was unwelcome conduct that was based on Tina's sex or gender, and his conduct toward Tina seemed to be a condition of employment with Dwyer and/or so severe and pervasive as to create a work environment that a reasonable person would consider intimidating, hostile, and abusive.

90. Swillum's conduct—and Dwyer's abhorrent handling of Tina's complaints—is part of a pattern and practice of sexual harassment, unlawful sexual discrimination, and retaliation, at Dwyer's plant in Grandview, Missouri.

91. The pattern and practice includes (but is not limited to) the instances referenced in the Additional Charges of Discrimination filed by the other female employees referenced in paragraphs 83-84 of this Complaint.

92. Dwyer's conduct in this regard caused Plaintiff damages.

93. Dwyer has acted with an evil motive and/or in reckless disregard of Plaintiff's rights, and its conduct was intentional, wanton, and willful, and warrants an award of punitive damages.

WHEREFORE, Plaintiff Tina Hillman respectfully requests that the Court enter judgment in her favor and against Defendant Dwyer Instruments, Inc. for damages in excess of $500,000.00,

including damages for lost wages, front pay, lost benefits, emotional distress, interest, liquidated damages, attorneys' fees, expenses, equitable relief, punitive damages, and any other damages authorized by the MHRA; and such additional relief as is just and proper.

## COUNT II – RETALIATION – MISSOURI HUMAN RIGHTS ACT

94. Plaintiff incorporates the allegations set forth in paragraphs 1-93 as if fully set forth herein.

95. Dwyer is a covered employer under the MHRA.

96. Plaintiff, a female, is a covered employee under the MHRA.

97. Dwyer discriminated against Plaintiff on the basis of her sex in, among other ways, the following ways:

    a. Permitting Swillum to sexually harass Tina in 2018, 2019, and 2020;

    b. Failing to ensure that Swillum's sexual harassment of Tina stopped following her initial complaints in 2018;

    c. Failing to ensure that Swillum's sexual harassment of Tina stopped as she made additional complaints to her lead, Matt, in 2019;

    d. Failing to ensure that Swillum's sexual harassment of Tina stopped as she made a complaint in January 2020;

    e. Permitting its plant manager, Hampton, to ridicule Tina for making her complaints; and/or

    f. Not promoting Tina to a "lead" role following the termination of Swillum's employment in early 2020.

98. Plaintiff's protected activity in opposing the above-listed discrimination, including among other things, making multiple internal reports of harassment and discrimination and retaliation, filing her Charge of Discrimination, and later amending her Charge of Discrimination, were all motivating factors in Defendant's actions referenced in the preceding paragraph.

99. Dwyer's retaliation against Tina is part of a pattern and practice of retaliation (following employees' protected activity) at Dwyer's plant in Grandview, Missouri.

100. The pattern and practice includes (but is not limited to) the instances referenced in the Additional Charges of Discrimination filed by the other female employees referenced in paragraphs 83-84 of this Complaint.

101. Dwyer's conduct in this regard caused Plaintiff damages.

102. Dwyer has acted with an evil motive and/or in reckless disregard of Plaintiff's rights, and its conduct was intentional, wanton, and willful, and warrants an award of punitive damages.

WHEREFORE, Plaintiff Tina Hillman respectfully requests that the Court enter judgment in her favor and against Defendant Dwyer Instruments, Inc. for damages in excess of $500,000.00, including damages for lost wages, front pay, lost benefits, emotional distress, interest, liquidated damages, attorneys' fees, expenses, equitable relief, punitive damages, and any other damages authorized by the MHRA; and such additional relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for the foregoing causes of action.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests the trial be held in Kansas City, Missouri.

## CIVIL COVER SHEET

Attached as **Exhibit A** is a copy of the Civil Cover Sheet.

**HKM EMPLOYMENT ATTORNEYS LLP**

By: */s/ Brad K. Thoenen*
Brad K. Thoenen, KS 24479
bthoenen@hkm.com
John J. Ziegelmeyer III, KS 23003
jziegelmeyer@hkm.com
1501 Westport Road
Kansas City, Missouri 64111
816.875.9339

ATTORNEYS FOR PLAINTIFF